In re Lawrence S. CHARFOOS, Debtor.

**MICHIGAN NATIONAL BANK,**
**Plaintiff–Appellee,**

v.

**Lawrence S. CHARFOOS,**
**Defendant–Appellant.**

**No. 91–1516.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 10, 1992.

Decided July 7, 1992.*

13. *Id.* at 380–81, 107 S.Ct. at 2422.

14. *See Richardson,* 692 F.Supp. at 1457.

* This decision was originally issued as an "unpublished decision" filed on July 7, 1992. On September 9, 1992, the court designated the opinion as one recommended for full-text publication.

Douglas C. Bernstein, Michigan Nat. Corp., Legal Dept., (argued and briefed), Farmington Hills, Mich., for plaintiff-appellee.

Mark R. Bendure, (argued and briefed), Detroit, Mich., for defendant-appellant.

Before: SUHRHEINRICH and SILER, Circuit Judges; and BATTISTI, District Judge.**

BATTISTI, District Judge.

Appellant challenges the dismissal of his bankruptcy petition for bad faith. We affirm the judgment of the district court on different grounds.

Defendant–Appellant Lawrence S. Charfoos (Charfoos) is an attorney with a prominent and successful practice in medical malpractice. Aside from pursuing his profession, he invested heavily in a cosmetics company he and his wife founded in Paris. He experienced financial difficulties as a result of his involvement with the cosmetics company, and in late 1987 and early 1988, he sought to sell his interest. In anticipation of the sale, he took out several unsecured bridge loans from Detroit area banks, among them the Plaintiff–Appellee Michigan National Bank (Michigan National).

The buyer reneged. Charfoos then defaulted on his loans.

Charfoos was obligated to Michigan National under the terms of two matured promissory notes, in the sums of $150,000 and $50,000. He also had failed to honor

** The Honorable Frank J. Battisti, United States District Judge for the Northern District of Ohio, sitting by designation.

his personal guaranty on another $100,000 note signed by the cosmetics company. After much negotiation, on February 22, 1989, Charfoos, Michigan National and other commercial creditors entered into a restructure agreement. Charfoos represented that he had good title to the assets being pledged and provided certified financial statements. He also agreed that he would not loan money, transfer assets or otherwise make any financial accommodation to another party without prior consent from the banks. Charfoos made two payments and then defaulted again. Upon Charfoos' default and with the discovery that he had loaned additional monies to the cosmetics company, Michigan National sued in state court and obtained a judgment of $350,936.33, along with attorney fees and costs, and an order that Charfoos not dispose of any assets pending further proceedings.

The present appeal arises from Charfoos' bankruptcy filing on June 26, 1990. When he sought the loans from Michigan National, Charfoos provided financial statements showing that he had a net worth between $3,927,000 and $5,724,256, with his law firm stock valued at $1,200,000 to $1,250,-000. In his bankruptcy petition, he listed $23,600 in assets as against $4,533,807 in liabilities.

The financial statements Charfoos provided to Michigan National and court filings contained numerous inaccuracies and omissions. In addition, immediately prior to filing for bankruptcy, despite having received service through his attorney, Charfoos failed to appear for a creditor's examination. He also sold his interest in a co-operative, and traded in his Mercedes as part of purchasing a new Oldsmobile, transactions which Defendant contends violated his restructure agreement as well as state court orders. On the basis of these facts, among others, Michigan National filed a motion to dismiss the bankruptcy petition for bad faith.

The bankruptcy court denied the motion. The district court found clear error in the bankruptcy court decision and reversed. The district court dismissed the bankruptcy

and issued a temporary restraining order preventing Charfoos from dissipating $134,411.91 in a debtor-in-possession account held by Michigan National. Furthermore, the district court denied Michigan National's request that the account be frozen. Finally, the court waived the stay of judgment.

## I. STANDARD OF REVIEW

██ On appeal from the bankruptcy court, a district court applies a clearly erroneous test to finding of fact, but plenary review to questions of law. *See In re Zick,* 931 F.2d 1124, 1126 (6th Cir.1991) (dismissal will be evaluated for abuse of discretion); *In re Caldwell,* 851 F.2d 852, 857 (6th Cir.1988) (bankruptcy court is finder of fact). On appeal of a bankruptcy matter from a district court, our review follows the same standards. We evaluate the bankruptcy court decision directly, without being bound by the district court's determinations. *See In re Brown,* 951 F.2d 564 (3rd Cir.1991). Accordingly, we conduct an independent examination of the record. In this matter, although we conclude that debtor's plan could not serve as a basis for finding bad faith, we need not remand to determine whether the debtor's pre-petition conduct by itself is sufficient to sustain a finding of bad faith. Instead, we make the determination directly.

## II. INDICIA OF BAD FAITH

██ It is well-settled that even though Chapter 11 does not expressly so state, bad faith may serve as a ground for dismissal of a petition. *See In re Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985); *Zick,* 931 F.2d 1124. *See also* 11 U.S.C. § 1112(b) (grounds for dismissal). It is less firmly established though what actions may rise to the level of bad faith. In the case at bar, Michigan National has raised three possible factors contributing to bad faith: (1) the fact that Charfoos is an individual debtor rather than a business; (2) his pre-petition conduct; (3) his plan. We find that Charfoos' status does not preclude him from using Chapter 11. Furthermore, his pre-petition conduct is sufficient

to establish bad faith and, as a consequence, any district court error in relying on the plan is harmless.

■ As Michigan National recognizes, the Supreme Court recently held that an individual debtor who is not engaged in business is entitled to reorganize under Chapter 11. *Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). The *Toibb* decision overrules prior Sixth Circuit case law to the extent that they differ. *Id.,* —— U.S. at —— n. 3, 111 S.Ct. at 2199 n. 3 (*discussing Winshall Settlor's Trust,* 758 F.2d 1136). In the present case, however, insofar as the court below required that an individual debtor have an ongoing business, its error was harmless. As discussed, *infra,* the district court holding is amply supported by other indicia of bad faith.

As for other indications of bad faith, the case law has provided several different lists of possibilities. Michigan National relies on a Fifth Circuit decision, which Michigan National has characterized as offering eight different factors:

(1) the debtor has one asset;

(2) the pre-petition conduct of the debtor has been improper;

(3) there are only a few unsecured creditors;

(4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;

(5) the debtor and one creditor have proceed to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

(6) the filing of the petition effectively allows the debtor to evade court orders;

(7) the debtor has no ongoing business or employees; and

(8) the lack of possibility of reorganization.

*In re Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986).

■ Neither party has cited Sixth Circuit precedent of more recent vintage than *Winshall Settlor's Trust,* but both parties agree that bad faith is evaluated under flexible and multiple standards. A survey of case law under other chapters of the Bankruptcy Code reveals that the Sixth Circuit has followed different approaches. It has acknowledged that "[g]ood faith is an amorphous notion, largely defined by factual inquiry." *In re Okoreeh–Baah,* 836 F.2d 1030 (6th Cir.1988) (reversing bankruptcy court's denial of confirmation of plan for bad faith under Chapter 13). Or, as stated on another occasion, "no list is exhaustive of all the conceivable factors that could be relevant in analyzing a particular debtor's good faith." *Caldwell,* 851 F.2d at 860 (reversing district court dismissal for bad faith under chapter 7). Thus, "[d]ismissal based on lack of good faith must be undertaken on an *ad hoc* basis." *Zick,* 931 F.2d at 1129 (affirming bankruptcy court dismissal of Chapter 7 filing). In an effort to offer some guidelines, this circuit has cautioned that dismissal for lack of good faith "should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct or gross negligence." *Id.* In the context of a Chapter 13 filing converted into a Chapter 7 action, the Sixth Circuit has provided a list of factors that a bankruptcy court may consider, as follows:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief;

(11) the burden which the plan's administration would place upon the trustee.

*Caldwell,* 851 F.2d at 859. *See also Caldwell,* 895 F.2d 1123 (6th Cir.1991) (later proceedings). *See also In re Doersam,* 849 F.2d 237, 239 (6th Cir.1988) (offering similar list).

Under any of these tests, Charfoos' prepetition conduct is enough to show bad faith warranting dismissal. The examples, given in detail below, taken individually may be insufficient to support a finding of bad faith, but taken together form a pattern of conduct that is aptly characterized by that term.

### III. THE PRE–PETITION CONDUCT

The circumstances and incidents which indicate bad faith on the part of Charfoos may be separated roughly into three categories: (1) factual misrepresentations and omissions on financial statements and bankruptcy pleadings; (2) violations of state court orders; (3) extravagant lifestyle.

First, the misstatements of fact are found in financial statements filed with Michigan National as well as bankruptcy pleadings from the instant litigation. Charfoos, in his dealings with Michigan National, failed to reveal possible tax liabilities arising from a 1990 trial concerning his operation of a charter yacht business. He also exaggerated his assets by listing his worth in excess of $1.5 million even though his shares in his law firm, accounting for most of that figure, had no market value.

The more serious discrepancies between Charfoos' representations and reality came about within these proceedings. Among the examples, which disregard requirements of the bankruptcy court: Charfoos failed to disclose royalty income from his treatise and from oil and gas and limited partnerships; he did not mention that his shares in his law practice were held as collateral for $600,000 of outstanding loans; he failed to report that he was contributing to a 401(k) account, or that he liquidated that account in 1989; he omitted mention of an Individual Retirement Account (IRA); and, as with his disclosure to Michigan National, omitted mention of $245,000 paid in back taxes. He also described his personal possessions and wearing apparel as having a value of only $100, though his watch alone was insured for $1750. The actions that violated state court orders also were not disclosed.

Charfoos for the most part does not dispute that his statements were inaccurate. He contends that the inaccuracies may be explained or excused as de minimis. This position is unpersuasive in light of the sheer number of what are at best misstatements. Here, the pattern of conduct is significantly worse than in *Okoreeh–Baah,* where a finding of bad faith was reversed. There, the debtor made only one misrepresentation, by failing to record a lien on an automobile. *Okoreeh–Baah,* 836 F.2d 1030.

Second, Charfoos did not comply with state court orders. The court had ordered that "Defendant shall refrain from making any disposition or transfer of property now held or hereafter acquired, until the further order of the Court, pursuant to M.C.L.A. 600.6116 ..." Despite the order, he sold his interest in a cooperative. The net proceeds of $27,373.00 were almost entirely spent in the month preceding bankruptcy. Twelve days before filing for bankruptcy, Charfoos traded in a Mercedes, which he owned, and purchased a new Oldsmobile, a transaction which required that Charfoos finance $13,721 of the purchase price. Incidentally, in the bankruptcy petition, the majority of Charfoos' assets were attributable to the automobile. The least of the transgressions, but an indicative one, concerning state court proceedings was Charfoos' failure to attend a

meeting with creditors, which had been re-scheduled for his convenience.

Third, Michigan National argues that Charfoos continues to maintain an extravagant lifestyle. In particular, he uses a chauffeur, leases an apartment with a higher rent than the mortgage payments on his former cooperative, where he also had new bookshelves installed, and dines at expensive restaurants in the Detroit area. With the exception of the chauffeur, the allegations concerning lifestyle are not well-developed in the factual record. Thus, it would be inappropriate to rely on them. With the misstatements and disregard of state court orders, it is not necessary to find further evidence of bad faith. In sum, Charfoos' conduct falls below the applicable standards.

## IV. THE PLAN

Charfoos contends that the district court erred by considering his plan in dismissing his petition. He argues that, at most, the district court should have dismissed the plan but not the petition in its entirety.

■ The position is not well-supported in case law. Rather, it is recognized that generally "bankruptcy courts [have] substantial discretion to dismiss ... [where] the debtor files an untenable plan of reorganization." *Toibb,* — U.S. at —, 111 S.Ct. at 2201. *See also Winshall Settlor's Trust,* 758 F.2d at 1137; *Caldwell,* 851 F.2d at 859.

Nevertheless, in this particular case, Charfoos has an argument with some merit because the bankruptcy court had not been presented with the plan. The bankruptcy court reached its finding of good faith prior to the filing of the plan; it expressly indicated that a reasonable probability existed that a plan would be proposed and confirmed. Although it is unclear how the plan then found its way into record, by the time of the district court hearing, Charfoos had presented it. Perhaps he would have fared better had he not done so, as the district court relied on the plan in finding bad faith.

■ As Charfoos argues, and Michigan National essentially concedes, it is a long-standing principle of jurisprudence that an appellate court should not pass on issues not raised at the trial level. This rule is "essential in order that the parties may have the opportunity to offer all the evidence they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by a final decision there of issues upon which they have had no opportunity to introduce evidence." *Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877–78, 49 L.Ed.2d 826 (1976) (internal citation omitted). *See also Brown v. Marshall,* 704 F.2d 333 (6th Cir. 1983), *cert. denied* 464 U.S. 835, 104 S.Ct. 120, 78 L.Ed.2d 119 (1983); L. King, 1 *Collier on Bankruptcy,* § 3.03 at 3/200–3/201 (1989). *Cf. In re Revco,* 898 F.2d 498 (6th Cir.1990) (whether Bankruptcy Code required appointment of examiner was legal issue that could be resolved on appeal rather than on remand).

Applying the rule to the present case, the district court should not have considered the plan. Even so, its decision stands without reference to the plan. Any reliance on the plan constitutes harmless error.

Finally, Charfoos argues that the district court should not have waived the otherwise applicable stay. As we affirm the district court dismissal, and it has discretion to waive a stay in the bankruptcy context, Charfoos' argument cannot be sustained.

Accordingly, the district court dismissal for bad faith is AFFIRMED.

IT IS SO ORDERED.