**In re Ilene Ruth MOSES, Debtor.**

**No. 94–CV–73837–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 9, 1998.

361

Thomas R. Morris, Shefferly & Silverman, West Bloomfield, MI, for David W. Allard, Jr., Trustee of Debtor, Shefferly & Silverman.

David J. Vigna, Michigan National Corp., Farmington Hills, MI, for Michigan National Bank.

Peter A. Jackson, Clark Hill, PLC, Detroit, MI, for I.R.M., Inc., Ilene Ruth Moses.

Roger L. Premo, Farmington Hills, MI, for KPMG Peat Marwick LLP.

### OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S DISBURSEMENT

ROSEN, District Judge.

### I. INTRODUCTION

This matter is before the Court on Appellant KPMG Peat Marwick's (formerly Peat Marwick Main & Co.) bankruptcy appeal from an order authorizing payment of administration expenses, disbursement of remaining funds in satisfaction of garnishment, and closing of the case. Appellant claims that the Bankruptcy Court did not have jurisdiction to determine the validity of its claim against IRM, Inc., a non-debtor corporation whose shares were wholly owned by the bankruptcy estate. Peat Marwick also claims that the Bankruptcy Court erred in deciding, on the basis of motion papers and oral arguments, that it had no enforceable claim, and that the funds of IRM could be

disbursed to creditors of the debtor's estate to the exclusion of Peat Marwick's claim.

## II. *FACTS*

Ilene R. Moses, the debtor in this Chapter 7 case, was a clothing designer who ran several businesses in the women's clothing industry. Mrs. Moses owed millions of dollars in bank loans secured by her accounts receivable, and also owed a significant amount to her former accountants, Peat Marwick Main & Co. ("Peat Marwick"). On January 17, 1989, Peat Marwick filed a lawsuit in Wayne County Circuit Court against Mrs. Moses, IRM, Inc., and three other corporations owned and controlled by Mrs. Moses, concerning nonpayment of accounting invoices in the amount of $36,950.

After Mrs. Moses failed to pay her creditors, an involuntary bankruptcy petition was filed against her on August 1, 1989. Mrs. Moses consented to the entry of an order for relief under Chapter 11, and the case was administered by the Trustee in Chapter 11 until September 10, 1990. On that date, the case was converted to Chapter 7 because Mrs. Moses failed to obtain confirmation of a plan of reorganization. Mr. Allard continued on as the Chapter 7 Trustee.

The filing of the involuntary petition against Mrs. Moses stayed the Wayne County lawsuit pursuant to 11 U.S.C. § 362(a). On January 5, 1990, the bankruptcy prompted the Wayne County Circuit Court to enter an order which read, "Dismissal, administrative reason, bankruptcy stay."[1]

As Mrs. Moses' Chapter 7 case proceeded, the Trustee made a motion for an order approving a loan to enable him to pay expenses of administration. The motion was granted, and Michigan National and Semifora A.G. loaned funds to the Trustee pursuant to 11 U.S.C. § 364(c)(1). The Trustee then exercised his rights as the sole shareholder of IRM to elect himself as sole officer and director, and liquidate the assets of IRM. On September 11, 1991, the Trustee filed a motion urging the Bankruptcy Court to accept a settlement agreement between Peat Marwick and IRM in which Peat Marwick agreed to dismiss the Wayne County lawsuit in return for IRM not filing a malpractice suit against Peat Marwick. The motion was denied.

On November 16, 1992, the Chapter 7 case was dismissed with prejudice by order of the Bankruptcy Court after the Trustee detailed the lack of cooperation he was receiving from Mrs. Moses. On July 21, 1994, the Bankruptcy Court changed its order to dismissal without prejudice following an appeal to this Court. The order was affirmed by this Court in an opinion and order dated September 27, 1996 and an amended opinion and order dated October 30, 1996.[2]

On November 1, 1996, Michigan National Bank obtained a judgment against Mrs. Moses and served a writ of garnishment on the Trustee. The Trustee responded to the writ, and entered into settlement discussions with persons whom he considered had potential claims to the funds held by him. Those persons included Michigan National Bank and all the other administrative-expense claimants in the bankruptcy case, but did not include Peat Marwick.[3]

---

1. The parties disagree over whether this order dismissed or stayed the case. The Trustee argues the order amounted to a dismissal, while Peat Marwick claimed it was simply the Wayne County Circuit Court's way of issuing a stay.

2. An appeal may still be pending in the United States Court of Appeals for the Sixth Circuit. The Trustee understands the only issue in that appeal to be whether Mrs. Moses is entitled to a discharge. The Trustee is not a party to that appeal.

3. Michigan National Bank claimed to be entitled to funds in the Moses estate pursuant to its garnishment because, upon dismissal of the bankruptcy case, the funds re-vested in Mrs. Mo-

ses pursuant to 11 U.S.C. § 349(b)(3). Michigan National Bank asserted claims to funds in the Moses estate as being owed in repayment of the "super-priority" loan made by Michigan National Bank pursuant to 11 U.S.C. § 364(c)(1), and that it was entitled to a right of set-off with respect to funds on deposit with it.

John C. Bohl, Jr., accountant for the Trustee, claimed fees and expenses. A fee application had been filed by him on October 25, 1994, but it had never been ruled upon. IRM owed Mr. Bohl fees and expenses because he was retained by the Trustee in January of 1992, for the purpose of preparing tax returns for IRM.

The Trustee claimed substantial fees as trustee commission pursuant to 11 U.S.C. § 326. A

In formulating the settlement eventually approved by the Bankruptcy Court, the Trustee claims to have concluded that Peat Marwick no longer held an enforceable claim with respect to the proceeds of the property of IRM based upon the applicable statute of limitations. M.C.L. § 600.5807(8) specifies a period of six years from the date on which the cause of action accrued, and Peat Marwick's breach of contract claim accrued at least eight years prior to the Settlement Motion, since they filed the lawsuit against IRM in January of 1989, and its cause of action necessarily accrued before that date.

On February 13, 1997, the Bankruptcy Court held a hearing on the Settlement Motion, in which all of the parties were heard, including Peat Marwick. Peat Marwick stated that IRM was indebted to Peat Marwick in the amount of $72,726.64 (including interest to the hearing date at the statutory judgment rate). The Court granted the Settlement Motion, which did not include a disbursement to Peat Marwick.

On April 1, 1997, the Bankruptcy Court entered the corresponding order, and shortly thereafter the Trustee disbursed the funds.[4] On April 10, 1997, Peat Marwick filed its appeal of the April 1, 1997 Order. The notice of appeal specifically designated as Appellees each of the persons named to receive a disbursement under the order: David W. Allard, Jr.; Shefferly & Silverman; Michigan National Bank; and John Bohl & Associates. Accordingly, Mr. Allard and every other recipient of funds under the April 1, 1997 Order is a party to this appeal. Peat Marwick did not seek a stay of the order, claiming the Bankruptcy Court would not have granted it because the court wanted the case closed. Peat Marwick did not pursue any other avenue to stay the order, although, on February 13, 1997, the day of the hearing, Peat Marwick filed a petition for involuntary bankruptcy against IRM. The petition was later dismissed and Peat Marwick did not appeal.

The Trustee claims that the payments made pursuant to the Settlement Motion effectuated compromises of the parties' rights. In accordance with the April 1, 1997 Order, as stated in the settlement motion, Michigan National Bank gave up the rights it had with respect to its garnishment. Michigan National Bank also gave up any rights it had to a set-off with respect to funds deposited by the Trustee with Michigan National Bank, and its rights to repayment of the "super priority" loan. The other persons who received payment pursuant to the April 1, 1997 Order also settled their rights vis-a-vis Michigan National Bank.

On July 11, 1997, David W. Allard, Jr. filed a Motion for Dismissal of Appeal asserting that the appeal should be dismissed as moot.

## III. STANDARD OF REVIEW

The bankruptcy court's grant of summary judgment is question of law which the Court reviews de novo. *In re Batie*, 995 F.2d 85 (6th Cir.1993).

Questions of fact determined by the bankruptcy court are reviewed under a clearly erroneous standard. *In re Charfoos*, 979 F.2d 390, 392 (6th Cir.1992). The Court must give due regard to the bankruptcy court's ability to judge the facts presented, *In re H.J. Scheirich, Co.*, 982 F.2d 945 (6th Cir.1993); Fed.R.Bankr.P. 8013, and should not reverse the lower court's ruling unless it has a definite and firm conviction that a mistake has been made, not simply that a different result was possible, *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395–96, 68 S.Ct. 525, 542, 92 L.Ed. 746, *reh'g denied*, 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147 (1948).

---

substantial portion of Mr. Allard's services related to the liquidation of the property of IRM.

Shefferly & Silverman, attorneys for the Trustee, were entitled to fees and expenses pursuant to 11 U.S.C. § 331, and additional fees and expenses that had not yet been awarded by the Bankruptcy Court. Applications for Shefferly & Silverman' employment had been approved in January of 1990 and October of 1990.

4. Following entry of the April 1 Order, the Trustee paid $5,337.90 to John Bohl & Associates, approximately $42,000.00 to Michigan National, approximately $27,700.00 to Shefferly & Silverman, and approximately $14,000 to David W. Allard (himself). The funds distributed by the Trustee constituted all of the funds which had been held by him.

## IV. ANALYSIS

### A. Bankruptcy Court Jurisdiction

Peat Marwick claims that in deciding the Trustee's motion, the Bankruptcy Court lacked jurisdiction (1) to determine the validity of Peat Marwick's claim against IRM, a non-debtor corporation whose shares were owned by the bankruptcy estate; and (2) to authorize the distribution of IRM funds to creditors of the bankruptcy estate since Peat Marwick's breach of contract claim against IRM was not enforceable because the statute of limitations had run.

 However, the clear language of the bankruptcy statutes indicate that the Bankruptcy Court's ruling was well within its jurisdictional parameters.[5] The extent of the bankruptcy courts' jurisdiction is delineated, in part, by § 157(b), which states:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
>
> (2) Core proceedings include, but are not limited to—
>
> (A) matters concerning the administration of the estate; * * *.

In this case, the Bankruptcy Court's ruling on the settlement motion was a matter "concerning the administration of the estate" because it dealt specifically with the disposition of the property of the estate. It is undisputed that the stock of IRM was owned solely by the Trustee, as successor-in-interest to the Debtor, subject only to the bona fide claims of IRM creditors. Thus, the Bankruptcy Court necessarily had jurisdiction to determine whether such claims existed, and jurisdiction to determine the value of the Debtor's equity interest.

Furthermore, because IRM was wholly owned by the Debtor, it was properly considered part of the Estate. Under 11 U.S.C. § 541(a)(1), an estate is comprised of "all legal or equitable interests of the debtor in the property as of the commencement of the case." In this case, because IRM was wholly owned by Debtor, it became an asset of the estate upon the filing of a Chapter 11 petition. *See, e.g., In re Baker,* 68 B.R. 360, 363 (Bankr.D.Or.1986) (debtor's wholly owned corporation became asset of estate upon filing of Chapter 11 petition, so that Chapter 11 trustee could not make payments from corporation to himself and others without obtaining bankruptcy court approval, notwithstanding that the corporation never filed for bankruptcy relief); *In re Crabtree,* 39 B.R. 718 (Bankr.E.D.Tenn.1984) (the bankruptcy court found that a debtor exerted such control over the wholly owned corporation so as to render it an alter ego of the debtor).[6] Therefore, the Bankruptcy Court did not exceed its jurisdictional authority by ruling that Peat Marwick had no legal rights in the property of IRM and that the Trustee could make disbursements to the estate and its creditors.

### B. Bankruptcy Court's Ruling on Motion

Peat Marwick claims that the Bankruptcy Court wrongfully decided contested matters—questions of fact—during an ordinary motion hearing, in contravention of the standard of review applicable to summary judgment proceedings.

 In the bankruptcy court, dispositive motion hearings must conform to the sum-

---

**5.** The subject-matter jurisdiction of district courts over civil proceedings in bankruptcy is set out in 28 U.S.C. § 1334(b), which states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Each district court may provide that these cases be handled by bankruptcy judges. 28 U.S.C. § 157(a). In this district, all matters falling within the scope of § 157(a) are referred to bankruptcy judges. E.D. Mich. L.R. 83.1. Clearly, the Bankruptcy Court had juris-diction over the case initially, as the case started under chapter 11 of title 11 and continued under chapter 7.

**6.** In arguing that IRM's assets should not be treated as Debtor's assets, Appellant relies on *In re Julien,* 120 B.R. 930 (Bankr.W.D.Tenn.1990). This reliance is misplaced, however, because the debtor in *Julien* only owned 30% of the company, whereas Ms. Moses was the sole owner of IRM. *Julien,* 120 B.R. at 935 n. 5.

mary judgment standard enunciated in Rule 56 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings under Federal Rules of Bankruptcy Procedure 9014 and 7056. Thus, the order granting the motion for approval of the settlement was proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(c). *See also, Simon v. New Center Hospital,* 187 B.R. 560, 569–70 (E.D.Mich.1995). Peat Marwick claims a genuine issue of material fact existed as to whether or not it had a valid claim against IRM.

### 1. *Statute of Limitations*

Peat Marwick's first argument is that the Bankruptcy Court erred in deciding that it did not have an enforceable breach of contract claim against IRM because the statute of limitations had run. Peat Marwick argued that its timely filed lawsuit in was pending in Wayne County Circuit Court, and that, even if it was not, the statute of limitations was tolled from the time the Wayne County complaint was served on IRM.

■ Under Michigan law, the statute of limitations for a contract claim is six years. M.C.L.A. § 600.5807(8). However, under certain circumstances the limitations period may be tolled:

■ The statutes of limitations or repose are tolled:
(a) At the time the complaint is filed and a copy of the summons and complaint are served on the defendant.
(b) At the time jurisdiction over the defendant is otherwise acquired.
(c) At the time the complaint is filed and a copy of the summons and complaint in good faith are placed in the hands of an officer for immediate service, but in this case the statute is not tolled longer than 90 days after the copy of the summons and complaint is received by the officer. * * *
M.C.L.A. § 600.5856. This provision "allows a plaintiff to avoid the bar of the statute of limitations when there has been a prior suit not adjudicated on the merits." *Affiliated Bank of Middleton v. American Ins. Co.,* 77 Mich.App. 376, 379, 258 N.W.2d 232 (1977) (*citing Buscaino v. Rhodes,* 385 Mich. 474, 189 N.W.2d 202 (1971); *Kiluma v. Wayne State University,* 72 Mich.App. 446, 250 N.W.2d 81 (1976); Committee Comment, M.C.L.A. § 600.5856; M.S.A. § 27A.5856).

■ Viewing the record as a whole, the Court believes that there was a genuine issue of material fact as to whether or not the statute of limitations had expired on Peat Marwick's contract claim against IRM. While it is true that the Bankruptcy Court had before it the state court order of dismissal of the case, dated January 5, 1990, which would clearly indicate that the six-year statute of limitations had run, the Bankruptcy Court was also confronted with a significant amount of contradictory evidence. For example, at the hearing Peat Marwick's attorney informed the Bankruptcy Court that Wayne County Circuit Court Judge Gillis had entered an order on February 7, 1997:(1) providing that his prior order of January 5, 1990 was intended merely to stay the proceedings, rather than dismiss them in their entirety; (2) vacating the stay; and (3) reinstating the case to active status on the Wayne County Circuit Court docket. This evidence raised at least a question of whether Peat Marwick's litigation against IRM was actually pending, which constitutes a genuine issue of material fact which the Bankruptcy Court should have resolved before granting the Trustee's Settlement Motion.

### 2. *Laches*

■ Despite the Bankruptcy Court's failure to properly resolve the statute of limitations issue, its approval of the Settlement Motion was correct based on the application of the doctrine of laches. The common law doctrine of laches is codified under Michigan law under M.C.L.A. § 600.5815, which provides that "[t]he equitable doctrine of laches shall also apply in actions where equitable relief is sought." The Michigan Supreme Court has defined laches as "an affirmative defense which depends not on mere lapse of time but principally on the requisite of inter-

vening circumstances which would render inequitable any grant of relief to the dilatory plaintiff[.]" *Lewis v. Poel,* 376 Mich. 167, 169, 136 N.W.2d 7 (1965) (*cites omitted*). *See also, Urbanco, Inc. v. Urban Systems Streetscape, Inc.,* 111 B.R. 134, 135 (W.D.Mich.1990) (court defined laches as "such neglect or omission to assert a right taken in conjunction with lapse of time and other circumstances causing prejudice to an adverse party, as well as operate as a bar in equity").

■ Here, there was uncontradicted evidence in the record to support the Bankruptcy Court's ruling based on the application of the doctrine of laches. Peat Marwick first filed the Wayne County lawsuit in 1989, which was apparently stayed because of the Debtor's filing of bankruptcy. However, Peat Marwick did not attempt to have the stay lifted, even though it now maintains that the Bankruptcy Court never had jurisdiction over IRM in the first place (which would mean that the state court had no authority to freeze the litigation against IRM, a non-Debtor party to the state court litigation). Further, Peat Marwick failed to reinstate the lawsuit against IRM until just before the Trustee's Settlement Motion, despite having ample opportunity to do so. But perhaps most importantly, Peat Marwick failed to take any action even when the bankruptcy case was dismissed in 1992, thereby lifting any automatic stay that would have been in effect. Ultimately, there was a lapse of seven years during which Peat Marwick took absolutely no action to advance or protect its rights.

Not only has Peat Marwick been derelict in vigorously pursuing its litigation against IRM, but enforcement of its rights at this juncture would prejudice the Moses estate, its creditors and the professionals who served it. If Peat had promptly asserted its rights and prevailed to the fullest extent it would have been entitled to $36,050, leaving $16,000 remaining for the Moses estate through the Trustee as successor shareholder. When Peat finally took action by objecting to the Trustee's motion, it demanded interest for the elapsed time in an amount surpassing the principal amount ($72,000).

Thus, Peat Marwick's neglect would result in the other interested parties receiving at least $35,000 less than they actually received. Indeed, the enforcement of Peat Marwick's rights would have significantly eaten up the $89,000 disbursed after the Settlement Motion.

Therefore, because of Peat Marwick's inordinate and unexcused delay in asserting its rights, and the resulting prejudice, the Bankruptcy Court properly ruled that it did not have a valid claim against IRM, and disbursed the money accordingly.

IT IS HEREBY ORDERED that the Bankruptcy Court's April 1, 1997 Order Authorizing Payment of Administrative Expenses, Disbursement of Remaining Funds in Satisfaction of Garnishment, and Closing of Case is AFFIRMED.