PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MAC PANEL COMPANY,
          *Plaintiff-Appellee,*

v.                                              No. 01-1068

VIRGINIA PANEL CORPORATION,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., District Judge.
(CA-00-699-1, CA-00-700-1, BK-98-10952C-11G)

Argued: January 24, 2002

Decided: March 6, 2002

Before WIDENER, WILKINS, and NIEMEYER, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Widener and Judge Wilkins joined.

## COUNSEL

**ARGUED:** Rory D. Whelehan, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Greenville, South Carolina, for Appellant. John Herbert Small, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, Greensboro, North Carolina, for Appellee. **ON BRIEF:** H. Arthur Bolick, II, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, Greensboro, North Carolina, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

Challenging a Chapter 11 plan of reorganization of MAC Panel Company, Virginia Panel Corporation, the largest creditor, appealed the bankruptcy court's order confirming the plan to the district court. Because no stay of the bankruptcy court's order had been obtained and because the plan had been substantially consummated, the district court dismissed the appeal as "equitably moot." The court concluded that any reversal of the bankruptcy court order would "require the undoing of financial transactions involving third parties" and would "create an unmanageable . . . situation for the bankruptcy court." For the reasons that follow, we affirm.

I

MAC Panel Company ("MAC Panel"), a North Carolina corporation operating in High Point, North Carolina, and Virginia Panel Corporation ("VPC"), a Virginia corporation operating in Waynesboro, Virginia, are virtually the only significant competitors in the manufacture and sale of high performance electronic interface connector systems. In 1993, VPC sued MAC Panel for infringing two patents and for related claims. After lengthy litigation, VPC obtained a final judgment against MAC Panel for over $1.91 million. Before completing that litigation, VPC also commenced a parallel action in August 1994 against Joseph Craycroft and John Craycroft, the president and former president of MAC Panel, respectively, alleging that they induced MAC Panel's patent infringement and thereby seeking an alternative source for VPC's patent infringement damages.

After MAC Panel unsuccessfully exhausted its appeals of the patent infringement judgment, it filed this Chapter 11 bankruptcy proceeding on April 14, 1998. Shortly thereafter, it commenced an adversary action in the bankruptcy court against VPC, seeking to enjoin VPC from continuing the separate litigation against Joseph Craycroft. MAC Panel alleged that the injunction was necessary to enable Craycroft to devote the time and attention necessary to prepare a plan of reorganization for the company. That complaint was later amended to extend the injunction request to include the claims against John Cray-

croft and to request that the injunction be made permanent as a condition of a proposed plan of reorganization under which the Craycrofts would voluntarily pay into the bankruptcy estate the amounts necessary to pay all creditors in full, including VPC.

More particularly, the proposed plan of reorganization called for a cash payment in full to all priorities on its effective date. Unsecured creditors with claims less than $2,000, as well as those who were willing to reduce their claims to $2,000, would receive 50% of their claims on the effective date, with payment of the remainder six months later. Other unsecured creditors, including VPC, would be given the choice of receiving either an initial distribution of 35% of their claims on the effective date, with periodic payments of the remainder to follow, or a one-time lump sum payment of 60%. Because implementation of the plan required that MAC Panel have $1,217,000 on the effective date, of which MAC Panel projected to have only $430,000, Joseph Craycroft committed, as part of the plan, to pay to the estate at least $1.1 million. In exchange for this voluntary contribution, Craycroft demanded a permanent injunction, prohibiting VPC from pursuing its suit against the Craycrofts individually. The injunction would be dissolved only if MAC Panel defaulted on its payments to VPC.

Following opposition from VPC and confirmation hearings, the proposed plan for reorganization was denied. The principal problems were that the plan failed to pay VPC a sufficient rate of interest on the deferred part of its unsecured claim and that the provision releasing the Craycrofts was unacceptable. MAC Panel then filed an amended plan. The only significant change in the amended plan relevant to VPC was the payment of 9% interest, a rate that was acceptable to VPC. Despite VPC's continued objection — principally due to the release of the Craycrofts — the bankruptcy court approved the amended plan by order dated February 24, 2000. In denying VPC's request for a stay of that order, the bankruptcy court discounted VPC's opposition to the plan:

> In addition to the debtor-creditor relationship between the two companies . . . MAC Panel is the only competitor of VPC. In most Chapter 11 cases, a creditor faced with a plan under which it was to be paid its entire indebtedness plus

> 9% interest, with an immediate payment of $744,000.00, would be motivated to support the plan to the extent that such creditor was guided by the instincts of a creditor.

VPC appealed the bankruptcy court's order and judgment of confirmation and filed a motion in the bankruptcy court for a stay pending appeal. When the bankruptcy court refused to grant the stay, VPC chose neither to appeal that denial nor to seek an independent stay from the district court.

On the effective date of the plan, March 27, 2000, MAC Panel acquired the $1.1 million of Craycroft funds; it made payments to certain creditors of $137,372; and it placed $1,095,329 in an interest-bearing "Reserve Account" for other payments due on the effective date, for claims being disputed, and for claims not yet liquidated for creditors. This Reserve Account also included $210,000 for professional fees and expenses.

After the effective date, MAC Panel continued the process of paying off creditors, most of whose disputed claims were resolved by settlement or by the bankruptcy court. Twelve unsecured creditors elected to receive a one-time lump sum payment equal to 60% of their allowed claims in full satisfaction of their claims. Seven other unsecured creditors elected to reduce their claims to $2,000. By August 2000, MAC Panel had paid out approximately $1 million, of which over $750,000 had been paid to VPC in respect of its judgment against MAC Panel.

After the effective date of the plan, MAC Panel succeeded in continuing its business anew. It secured a new loan for operations as well as a revolving line of credit from Bank of America; it assumed 17 executory contracts in unexpired leases; it cured existing defaults under these contract leases; and it entered into a substantial new equipment lease with a creditor, that had a value in excess of $175,000. It also began taking orders from customers and incurred trade debt with creditors who assumed that MAC Panel had successfully emerged from bankruptcy.

Noting all that had transpired since the effective date of the plan, the district court concluded on VPC's appeal that it would not be prudent — some eight months after the effective date — to revisit MAC Panel's plan of reorganization and to risk "the undoing of financial transactions involving third parties, not participants in this litigation."

The court concluded that it would be impractical to reverse the consummation of the plan and accordingly dismissed the appeal, invoking the doctrine of equitable mootness. This appeal followed.

## II

Unlike the constitutional doctrine of mootness, which bars consideration of appeals because no Article III case or controversy remains, the doctrine of *equitable* mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable. Applied principally in bankruptcy proceedings because of the equitable nature of bankruptcy judgments, equitable mootness is often invoked when it becomes impractical and imprudent "to upset the plan of reorganization at this late date." *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994). As we have articulated the nature of the principle:

> Some controversies are not amenable to judicial resolution, and some grow beyond the remedial powers of a court. This is particularly true when a party, seeking a return to the status quo ante, sits idly by and permits intervening events to extinguish old rights and create new ones.

*Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 841 F.2d 92, 93 (4th Cir. 1988).

Because the doctrine of equitable mootness is based on practicality and prudence, its application does not employ rigid rules. Rather, a court must determine whether judicial relief on appeal can, as a pragmatic matter, be granted. Factors in making this determination include (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties. *Accord Central States*, 841 F.2d at 96 ("[D]ismissal of the appeal on mootness grounds is required when implementation of the plan has created, extinguished or modified rights, particularly of persons not before the

court, to such an extent that effective judicial relief is no longer practically available").

With these factors in hand, we turn to the case before us, considering the totality of its circumstances. First, like the appellant in *Central States*, VPC failed to secure a stay of the bankruptcy court's judgment approving the reorganization plan. Although VPC initially applied to the bankruptcy court for a stay, its request was denied, and it chose neither to appeal to the district court nor to seek an independent stay in the district court or in this court. By making that strategic choice, VPC allowed the reorganization plan to go into effect, taking the risks that attended such a decision.

Second, the plan of reorganization approved by the bankruptcy court in its final judgment has now been substantially consummated. Substantial consummation, as defined in 11 U.S.C. § 1101(2), requires three events:

  (A)  Transfer of all or substantially all of the property proposed by the plan to be transferred;

  (B)  Assumption by the debtor or the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

  (C)  Commencement of distribution under the plan.

In the present case, all three of these events have occurred. Pursuant to the plan, the Craycroft funds were transferred to the estate of MAC Panel, and thereafter, MAC Panel used the funds for what was a continuing process of satisfying its creditors. Most of the disputed claims have been settled and at least 19 creditors have been paid. VPC itself has received over $750,000, and MAC Panel has remained current in its payments to VPC. In addition, MAC Panel has emerged from bankruptcy as a viable company and has entered into new leases, incurred new debt with trade creditors, and taken new orders from customers. Because of its emergence from bankruptcy, MAC Panel has been able to persuade these customers and a bank to extend credit.

Finally, it is clear from the foregoing that granting VPC relief on appeal now would undo the success of the reorganization plan and would adversely affect third parties who have already been paid and

who have relied on the implementation of the reorganization plan to date. *See In re U.S. Brass Corp.*, 169 F.3d 957, 961 (5th Cir. 1999) (stating that, while substantial consummation is a "momentous event," it justifies dismissing an appeal only when "the remedy . . . [sought] will affect the success of the plan or alter the rights of third parties that have been achieved by its substantial consummation"). A significant amount of money was distributed and numerous promises were made based on the assumption that MAC Panel had successfully reorganized.

VPC argues that it does not seek to undo the reorganization plan or to affect third parties. Rather, the relief it seeks on appeal is simply to vacate the injunction issued by the bankruptcy court against VPC with respect to its lawsuit against the Craycrofts individually. While an order simply vacating the injunction could be drafted, the difficulty with VPC's argument is that, by vacating the injunction, the condition for the Craycrofts' $1.1 million contribution would be undone. From the Craycrofts' point of view, they could have either used the million dollars to defend the lawsuit brought against them by VPC or put the million dollars into the bankruptcy estate so that VPC and other creditors could be paid in full. The bankruptcy court could not now equitably keep the money and also require the Craycrofts to defend the lawsuit. To grant VPC its relief on appeal would thus require returning to the Craycrofts their $1.1 million. And doing that would require recouping significant funds already paid out to creditors who are not parties to this litigation. Finally, VPC's relief would require the court to undo current banking and trade arrangements entered into by third parties in reliance on the success of the reorganization plan.

In sum, granting the relief requested by VPC on appeal would require the bankruptcy court to traverse a totally impractical, perhaps impossible, course — one that might be as daunting as the reconstruction of Humpty Dumpty.

Appealing to equity, VPC points to the unfairness in allowing the Craycrofts to avoid individual liability by helping MAC Panel pay off its debts. At first blush, VPC's argument holds substantial appeal. The Craycrofts individually were not the debtors in bankruptcy and the suit against them was an independent suit initiated by VPC. But on a closer look, there are countervailing equities. The bankruptcy court

sensed that VPC was taking advantage of bankruptcy procedures to place barriers in the way of its only competitor, an observation that the court made on two separate occasions.* Moreover, the suit against the Craycrofts was little more than a duplication of VPC's original suit against MAC Panel. Only if VPC were not paid by MAC Panel would their suit against the Craycrofts have any value. But under the bankruptcy arrangement, VPC will be paid in full, with interest, and if MAC Panel were to default, then the injunction would be vacated. In short, the independent lawsuit that VPC has against the Craycrofts has little or no value if VPC's damages are paid through the bankruptcy proceedings.

But even if these equities did favor VPC, the time now is too late, as a practical matter, to order the relief that VPC requests. As we observed in *Central States*, even if VPC made its case on the merits for relief, this court could not "equitably provide any remedy." 841 F.2d at 93.

The judgment of the district court is accordingly

*AFFIRMED*.

---

*In addition to referring to this anticompetitive motive in rejecting VPC's request for stay of the plan of reorganization, the bankruptcy court questioned VPC's anticompetitive motive when it denied VPC membership on the creditors' committee:

In the present case, VPC is not solely a creditor and has not been guided solely by the instincts of a creditor. Unlike any other creditor in the case, VPC would benefit significantly from the failure of MAC Panel because such failure would eliminate the competition. The longer MAC Panel remains in bankruptcy, the longer MAC Panel must compete against a competitor who not only is in a position to utilize MAC Panel's presence in Chapter 11 to gain competitive advantage but, in its dual status as a creditor, also is in a position to oppose and prolong MAC Panel's efforts to emerge from bankruptcy.