**In re Kevin Blake CARR, Debtor.**

**Kevin Blake Carr, Appellant,**

v.

**Donald F. King, Chapter 7 Trustee, Appellee.**

Bankruptcy No. 02–86083–SSM.
No. 1:04CV1437.

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 28, 2005.

George Ernest Marzloff, Marzloff and Locklear, Stafford, VA, for Appellant.

James Walter Reynolds, Odin Feldman & Pittleman PC, Fairfax, VA, for Appellee.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this Chapter 7[1] bankruptcy appeal, appellant debtor seeks review of the bankruptcy court's final order approving the trustee's final report and proposed distribution of the bankruptcy estate's assets, notwithstanding that appellant failed to obtain a stay of that order and notwithstanding that the trustee has since disbursed the entire bankruptcy estate pursuant to that order. The threshold issue on appellee's motion to dismiss is whether a debtor's bankruptcy appeal of the bankruptcy court's final order approving a plan of distribution is moot where, as here, the debtor failed to obtain a stay of that order pending appeal and the distribution of the bankruptcy estate has already been carried out, resulting in the distribution of the estate's funds to a non-party creditor.

For the reasons that follow, debtor's appeal must be dismissed as moot.

### I.

The dispositive facts are undisputed and may be summarized briefly. They begin on December, 16, 2002, when appellant Kevin Blake Carr ("Carr"), filed a voluntary Chapter 7 petition for bankruptcy. In the course of the bankruptcy proceeding, on November 4, 2003, Carr filed an amended bankruptcy schedule disclosing that he was entitled to tax refunds in the amount of $22,839.07. Seeking to protect a portion of the refunds, Carr further claimed a homestead exemption against the tax refunds, pursuant to Virginia Code § 34–4, in the amount of $3,412.86.[2] Donald King, the Chapter 7 trustee, filed an

---

1. *See* 11 U.S.C. § 701 *et seq.*

2. Virginia Code § 34–4 provides, in pertinent part, as follows:
   Every household shall be entitled ... to hold exempt from creditor process arising out of a debt, real and personal property, or either, to be selected by the householder, including money and debts due the householder not exceeding $5,000 in value.

objection to the exemption, arguing that Carr was not entitled to a homestead exemption as he had failed to file a timely homestead deed as required by Virginia Code § 34–17.[3] Following a hearing, the bankruptcy court by order entered March 5, 2004 sustained the trustee's objection and disallowed the exemption.[4]

Thereafter, on September 17, 2004, the trustee filed a final report and proposed distribution of the estate along with the trustee's application for compensation and reimbursement of expenses. Notably, the non-exempt assets available for distribution consisted entirely of the $22,839.07 in tax refunds received by Carr and some $30 in additional interest accrued.[5] The final report proposed disbursements of (i) $18,490.14 to Carr's ex-wife, Mary Ellen Carr, in partial payment of unpaid alimony and child support,[6] and (ii)$4362.72 to the trustee and his attorneys for the trustee's commission, attorney's fees, and administrative costs.[7] Thereafter, a hearing on the trustee's final report was set for October 19, 2004. Objecting to the proposed distribution, Carr filed a motion to continue the date of the hearing or, in the alternative, to direct the trustee to hold in escrow pending appeal (i) the sum of $3,412.86 and (ii) any attorney's fees sought to be awarded to the trustee's attorney. The bankruptcy court denied the motion, the hearing was held on October 19, 2004, and the bankruptcy court entered an order dated October 26, 2004 approving the trustee's report and the plan of distribution, as well as the trustee's application for compensation and reimbursement of expenses.

Two days later, on October 28, 2004, Carr filed a notice of appeal of (i) the bankruptcy court's amended order sustaining the trustee's objection to Carr's homestead exemption and (ii) its order approving the trustee's final report and distribution plan. Significantly, Carr did not file a motion to stay either order pending appeal, nor did he apply to the district court for a stay. Shortly thereafter, on November 8, 2004, the trustee issued the checks to distribute the funds in the estate's bank account, pursuant to the approved final report, to Ms. Carr, to the trustee, and to the trustee's attorneys. As a result, there are no longer any funds in the bankruptcy estate.

3. Virginia Code § 34–17 provides that "[t]o claim an exemption in bankruptcy, a householder who (i) files a voluntary petition in bankruptcy ... shall set such real or personal property apart on or before the fifth day after the date initially set for the [creditor] meeting held pursuant to 11 U.S.C. § 341, but not thereafter."

In the bankruptcy court, the trustee objected that Carr's homestead deed, filed on February 4, 2003, was untimely as it was filed more than five days after January 15, 2003, the date initially set for the § 341 meeting. In response, Carr argued that the five-day filing period should be measured not from the date the § 341 meeting was first scheduled, but rather from the date the § 341 meeting was actually held, that is, January 31, 2003. In any event, it is unnecessary to resolve this dispute because the appeal is dismissed here on mootness grounds.

4. The bankruptcy court subsequently entered a corrected order dated October 18, 2004 at Carr's behest to correct a clerical error. Specifically, the corrected order further reflected that the order had been "Seen and Objected to" by Carr's counsel.

5. Prior to distribution, a bond premium payment of $15.93 was also deducted from the account.

6. The total value of Ms. Carr's claim for alimony and child support was $37,750.

7. The trustee was paid a commission of $3036.88 and $346.72 in expenses while the trustee's attorneys, Odin, Feldman & Pittleman, P.C., received $959.50 in attorney's fees and $19.62 in expenses.

The notice and record on appeal were received in the district court on November 30, 2004 and, on the same day, the trustee moved to dismiss the appeal, arguing that the appeal is now moot. According to the trustee, even were the bankruptcy court's decision to be overturned, it is no longer possible to effect the relief Carr seeks because there are no funds remaining in the bankruptcy estate, the funds having been disbursed pursuant to a court approved plan. In response, Carr argues that the case should not be dismissed as moot (i) because he attempted to request a stay prior to the final hearing in the bankruptcy court when he moved in the alternative that the trustee be directed to place certain funds in escrow pending his appeal and (ii) because he believes that he may still pursue a civil remedy for conversion against the trustee. The parties briefed the issue, a hearing was held, and the matter is now ripe for dissolution.

## II.

Rule 8005, Fed. R. Bankr., permits a party to a bankruptcy proceeding to request a stay of the bankruptcy court's judgment, order, or decree pending appeal to the district court.[8] While the rule does not require that a party seek a stay pending appeal, a party who fails to do so incurs the risk that during the pendency of the appeal, as the implementation of the judgment "proceed[s] apace,"[9] the appeal may be rendered moot.

In general, "mootness" in bankruptcy appeals comes in two varieties: constitutional and equitable.[10] The constitutional doctrine of mootness arises from Article III's jurisdictional "case or controversy" requirement and differs from the doctrine of *"equitable* mootness" which relies on a "pragmatic principle" that with the passage of time after the implementation of a judgment in equity "effective relief on appeal becomes impractical, imprudent, and therefore inequitable." *Mac Panel Co. v. Virginia Panel Corp.,* 283 F.3d 622, 625 (4th Cir.2002) (emphasis in original). As Judge Easterbrook of the Seventh Circuit described the difference, constitutional mootness is characterized by an " *inability* to alter the outcome" while equitable mootness involves an *"unwillingness* to alter the outcome." *Matter of UNR Indus., Inc.,* 20 F.3d 766, 769 (7th Cir.1994) (emphasis added).[11] In the end,

---

**8.** Rule 8005, Fed. R. Bankr., provides in pertinent part:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge ... pending appeal must ordinarily be presented to the bankruptcy judge in the first instance.... [T]he bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge.

**9.** *Rochman v. Northeast Utils. Serv. Group (In re Public Serv. Co.),* 963 F.2d 469, 472 (1st Cir.1992).

**10.** *McLean Square Assocs., G.P. v. J.W. Fortune, Inc. (In re McLean Square Assocs., G.P.),* 200 B.R. 128, 131 (E.D.Va.1996) (citing *Cent. States, Southeast and Southwest Areas Pension v. Cent. Transport, Inc.,* 841 F.2d 92 (4th Cir. 1988)).

**11.** *See also In re Public Serv. Co.,* 963 F.2d at 471–72 (discussing distinction between constitutional and equitable mootness); *Anheuser–Busch, Inc. v. Miller (In re Stadium Mgmt. Grp.),* 895 F.2d 845, 847 (1st Cir.1990) (same); *Bruce v. Hawley Fuel Coalmart, Inc., (In re AOV Indus.),* 792 F.2d 1140, 1147 (D.C.Cir.1986), *vacated in part on other grounds,* 797 F.2d 1004 (D.C.Cir.1986)

Carr's appeal of the bankruptcy court's orders, denying his homestead exemption and approving the trustee's final distribution, fall within the scope of both of these doctrines.

As noted, constitutional mootness arises from Article III's "case or controversy" requirement and dictates that federal courts refrain from rendering judgments in expired disputes that would amount to mere advisory opinions. *See In re Mc-Lean Square Assocs.,* 200 B.R. at 131; *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) (mootness doctrine "avoid[s] advisory opinions on abstract propositions of law."). Thus, an appeal must be dismissed as moot when "an event occurs while a case is pending appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)).[12] Put differently, an appeal is moot when an "affirmance would ostensibly require something to be done which had already taken place," and a "reversal would ostensibly avoid an event which had passed beyond recall." *Brown-*

*low v. Schwartz,* 261 U.S. 216, 217–18, 43 S.Ct. 263, 67 L.Ed. 620 (1923). Thus, the essence of constitutional mootness lies in the court's jurisdiction or power to provide effective relief. In other words, if, in the circumstances, it is impossible to provide the requested relief, then the case should be dismissed as moot at the threshold.

■ The doctrine of equitable mootness, by contrast, is rooted in pragmatic and prudential concerns. The doctrine provides that if, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes, not impossible, "but impractical, imprudent, and therefore inequitable," the matter may be dismissed as a matter of equity. *See Mac Panel,* 283 F.3d at 625.[13] As the Fourth Circuit has said, this principle applies with particular force when "a party, seeking a return to the status quo ante, sits idly by and permits intervening events to extinguish old rights and create new ones." *Id.* (quoting *Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.,* 841 F.2d at 93). And appropriately, because the doctrine of equitable mootness is based on practicality and prudence, the Fourth Circuit has held that courts making this de-

(same); *Trans World Airlines, Inc. v. Texaco, Inc. (In re Texaco, Inc.),* 92 B.R. 38, 45 (S.D.N.Y.1988).

**12.** *See also In re Public Service Co.,* 963 F.2d at 471 (constitutional mootness may arise "where no effective remedy can be provided, or from a loss of jurisdiction over the res or the parties, before or during the appeal, which renders the appellate court powerless to grant the requested relief"); *In re Cantwell,* 639 F.2d 1050, 1053 (3d Cir.1981) ("Generally, an appeal will be dismissed as moot when events occur during the pendency of the appeal which prevent the appellate court from granting any effective relief."); *Metro Prop. Mgmt. Co. v. Info. Dialogues, Inc. (In re Info. Dialogues),* 662 F.2d 475, 476 (8th Cir.1981) ("The mootness concern arises when, as here,

it may be impossible for a court to grant effective relief because the disputed assets have been transferred ...."); *Credit Alliance Corp. v. Dunning–Ray Ins. Agency, Inc. (In re Blumer),* 66 B.R. 109, 113 (9th Cir. BAP 1986) ("Under general mootness principles, the lack of a stay may render an appeal moot if it becomes impossible to fashion effective relief.").

**13.** As the Fourth Circuit has noted, equitable mootness is typically applied in bankruptcy proceedings because of the equitable nature of bankruptcy judgments, and is often invoked in the Chapter 11 context when it becomes "impractical and imprudent 'to upset the plan of reorganization'" after substantial implementation. *Mac Panel,* 283 F.3d at 625 (citing *Matter of UNR Indus.,* 20 F.3d at 769).

termination should not "employ rigid rules," but rather consider and apply the following four factors:

(1) whether the appellant sought and obtained a stay;

(2) whether the ... equitable relief ordered has been substantially consummated;

(3) the extent to which the relief requested on appeal would affect the success of the ... other equitable relief granted; and

(4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Id.* While this broader equitable mootness doctrine generally has been applied to substantially consummated Chapter 11 reorganizations,[14] the Fourth Circuit has explicitly recognized that these factors apply not only to reorganizations, but also to "other equitable relief." *Id.* Thus, the equitable mootness doctrine's principles counseling pragmatism in the exercise of equity apply with equal force to the Chapter 7 liquidation of a bankruptcy estate.

■ Either mootness doctrine, applied here, compels the conclusion that while Carr could have requested a stay pursuant to Bankruptcy Rule 8005, his failure to obtain such a stay has rendered his appeal moot. To begin with, Carr's appeal is moot as a constitutional matter because

the orders Carr seeks to stay have already been carried out and all of the funds in the bankruptcy estate have already been disbursed. Thus, even were Carr to prevail on appeal, it would be impossible to accord him the relief he seeks, namely return of the distributed funds. This is so because the primary transferee, Carr's ex-wife, is not a party to this appeal. Thus, even were the homestead exemption to be allowed, it would not be possible to grant effective relief by ordering the return of the disbursed funds because the only paid creditor of the estate cannot be ordered to return the funds. *See In re Blumer,* 66 B.R. at 113 ("Under general mootness principles, the lack of a stay may render an appeal moot if it becomes impossible to fashion effective relief. Effective relief is impossible if funds have been disbursed to persons who are not parties to the appeal ...."); *see also Evergreen Int'l Airlines, Inc. v. Pan Am Corp. (In re Pan Am Corp.),* 1995 WL 366356, at *3, 1995 U.S. Dist. LEXIS 8402, at *5 (S.D.N.Y.1995) (dismissing case as moot where transferees of reorganization plan were not parties to the appeal).[15] Put differently, to proceed to decide the merits of the case would be a mere intellectual exercise as an affirmance would require that which has already taken place, namely distribution of the estate in accordance with the approved

---

**14.** *See, e.g., Mac Panel,* 283 F.3d 622 (applying equitable mootness to Chapter 11 reorganization); *see Manges v. Seattle–First Nat'l Bank (In re Matter of Manges),* 29 F.3d 1034 (5th Cir.1994) (same); *Huntington Nat'l Bank v. Shawnee Hills, Inc. (In re Shawnee Hills, Inc.),* 2002 U.S. Dist. LEXIS 23143 (S.D.W.Va.2002) (same).

**15.** For contrasting examples of cases rejecting dismissal on mootness grounds where the transferees of the bankruptcy funds were still parties to the appeal, *see Spirtos v. Moreno (In re Spirtos),* 992 F.2d 1004, 1006–07 (9th Cir. 1993) (where court could fashion effective

relief by ordering debtor, who was still a party to the appeal, to return money to the estate, appeal was not dismissed as moot); *Salomon v. Logan (In re Int'l Envtl. Dynamics, Inc.),* 718 F.2d 322, 326 (9th Cir.1983) (same); *In re Moses,* 225 B.R. 360, 363 (E.D.Mich.1998) (where Chapter 7 cash disbursements were made to four entities still party to the appeal case was not dismissed as moot); *Haynes v. First United Bank,* 133 B.R. 783, 786 (N.D.Miss.1991) (denying trustee's dismissal motion where debtor still party to appeal even though he had spent disbursed funds).

plan, and a reversal would be unable to nullify an event that has "passed beyond recall," namely the distribution of funds to a non-party. *Brownlow,* 261 U.S. at 217–18, 43 S.Ct. 263.[16] It follows, therefore, that because it would be impossible to award effective relief in the end, the case must be dismissed at the threshold.

Yet, constitutional mootness is not the only basis for the conclusion reached here. Even were it constitutionally possible to award the relief Carr seeks, dismissal is still warranted as the rights of the parties have been so modified that effective judicial relief is no longer practically available. *Huntington Nat'l Bank v. Shawnee Hills, Inc. (In re Shawnee Hills, Inc.),* 2002 WL 31681538 at *1, 2002 U.S. Dist. LEXIS 23143, at *4 (S.D.W.Va.2002). Application of the four factors articulated by the Fourth Circuit in *Mac Panel* plainly supports this conclusion. First, like the appellant in *Mac Panel,* Carr did not secure a stay of the bankruptcy court's judgment pending appeal. *See Mac Panel,* 283 F.3d at 625 (appellant requested but failed to obtain a stay). Indeed, Carr did not even *request* a stay from the bankruptcy court, nor did he seek a stay of the bankruptcy court's order from the district court or the bankruptcy appellate panel. Had Carr successfully obtained a stay, the funds would not have been disbursed and effec-

tive relief still could have been entered. The second *Mac Panel* factor also favors dismissal as the plan approved by the bankruptcy court has been more than substantially consummated; it has been full completed. The third factor also supports the mootness conclusion for to grant the relief requested on appeal, namely the recovery of some $3400.00, would undermine the success of the Chapter 7 liquidation plan. Ms. Carr, the primary recipient is not a party to this appeal and thus cannot be directed to return the funds disbursed to her. The only alternative that remains, therefore, is to recover some of these funds directly from the trustee. Yet, such a result is plainly neither equitable nor pragmatic as the predictable result would be to retard future trustees' implementation of court approved distribution plans. This is so because trustees' would be reticent to implement the plan before the opportunity for appeal had expired for fear that doing so might jeopardize their commissions. *See supra* note 16. Fourth, and finally, even were it possible to require Ms. Carr to return a portion of the distribution she received from the bankruptcy estate, it is possible, even likely, that Ms. Carr has already spent a substantial portion of the distribution in reliance on the bankruptcy court's approval of the distribution. Given the nearly three months that have passed

---

**16.** It could be argued, with some fine parsing, that Carr's case is not entirely moot as a constitutional matter, because the trustee as a party to the appeal could still be ordered to return a portion of his commission disbursement to the bankruptcy estate. Yet, even if it is possible to order such a return of the trustee's commission as a constitutional matter, it is clear that such relief would be inappropriate on equitable mootness grounds. It is plain that if a debtor were allowed to recover the trustee's commission if an approved distribution were reversed on appeal, trustees would then never proceed in accordance with an approved liquidation plan until the opportunity for appeal had expired—in essence,

such a policy would create a de facto automatic stay of all liquidations pending the expiration of the debtor's opportunity for an appeal. Such a chilling effect on trustees would seriously hamper the speed and efficiency of the bankruptcy process. In this case, at best, the trustee could be ordered, as a matter of equity, to return that portion of the commission that he would not have been paid had the homestead exemption been excluded from the bankruptcy estate. Yet, it is clear that such a remedy, after substantial consummation, indeed full execution, of the distribution plan, without any evidence of bad faith on the part of the trustee, would fail the equitable mootness bar.

and given that these alimony and child support payments are intended in large part to cover living expenses, it would likely impose a significant hardship to reverse the distribution process by recovering these funds. *See In re Shawnee Hills*, 2002 WL 31681538, at *3, 2002 U.S. Dist. LEXIS 23142, at *11 (considering *Mac Factor's* fourth factor and concluding that it would be inequitable to require disgorgement of third party paychecks long since cashed as it would impose a significant hardship). Thus, application of these factors makes clear that, even were a remedy possible, it would not be practical or equitable to reverse the implementation of the bankruptcy court's plan at this stage. Carr's remedy was to request a stay, either from the bankruptcy court or the district court, at the time he noticed his appeal, which he failed to do. Now that the plan has been implemented, he cannot press his case in the absence of a viable remedy.

Carr seeks to avoid the conclusion that this case must be dismissed as moot by raising two arguments, both of which are unavailing. First, he argues that he, in essence, did request a stay of the final distribution order when he moved to continue the final hearing, or in the alternative, that the trustee be directed to place certain funds in escrow pending his appeal. Notably, Carr filed this motion *before* the entry of the bankruptcy court's final order approving the trustee's plan, he did not reassert his motion *after* the final hearing when he noticed his appeal on October 28, 2004, and Carr never requested a stay in the district court. Yet, even assuming, *arguendo*, that Carr's motion could be considered a request for a stay, the bankruptcy court denied that request. The significance of an application for a stay is not that the mere application preserves one's entitlement to appellate review, but rather "the opportunity it affords to hold things in stasis." *In re UNR Indus.*, 20 F.3d at 769–70; *accord Mac Panel*, 283 F.3d at 625 (dismissing appeal as moot where appellant requested a stay from the bankruptcy court, which request was denied). Thus, it is not Carr's failure to request a stay that requires dismissal of his case as moot but rather his failure to obtain one.

Carr's second argument is also unpersuasive. Specifically, he argues that his appeal is not moot because a decision vindicating his homestead exemption claim would permit him to proceed on a civil theory of conversion against the trustee. Yet, even were this the proper forum to bring such a conversion claim, which it decidedly is not, the trustee in this case would not be subject to a claim for conversion as the disbursements were made pursuant to a plan approved by court order.

In sum, the appeal is moot on constitutional and equitable grounds and thus must be dismissed at the threshold without reaching the merits of the underlying appeal.

An appropriate Order will issue.