FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

BAP NO. EP 24-003

Bankruptcy Case No. 22-20126-PGC

KASSIANI DEMETRIADI PITASSI,
d/b/a Lucia's Greetings, LLC,
Debtor.

KASSIANI DEMETRIADI PITASSI,
Appellant,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Indenture Trustee for Mortgage IT Trust 2005-2,
DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee for
WAMU Mortgage Pass-Through Certificates-WAMU-2005-AR6, and
ANDREW M. DUDLEY, Chapter 13 Trustee,
Appellees.

Before
Finkle, Chief U.S. Bankruptcy Appellate Panel Judge;
Lamoutte and Cabán, U.S. Bankruptcy Appellate Panel Judges.

E. Chris L'Hommedieu, Esq., on brief for Appellant.
Kevin J. Crosman, Esq., on brief for Appellee, Deutsche Bank National Trust Company,
as Indenture Trustee for Mortgage IT Trust 2005-2.
No briefs filed for Appellees, Deutsche Bank National Trust Company, as trustee for
WAMU Mortgage Pass-Through Certificates-WAMU Series 2005-AR6, and
Andrew M. Dudley, Chapter 13 Trustee.

February 6, 2025

**Finkle, Chief U.S. Bankruptcy Appellate Panel Judge.**

Kassiani Demetriadi Pitassi (the "Debtor") filed a notice of appeal from the bankruptcy court's April 2, 2024 order confirming her amended chapter 13 plan (the "Confirmation Order"). By this appeal, she seeks review of the bankruptcy court's order entered nearly two years earlier denying confirmation of her original chapter 13 plan (the "Order Denying Confirmation").

The core dispute in this appeal is the Debtor's inclusion of a provision in her original plan that challenged the validity of two mortgages encumbering her Connecticut real estate. Appellee Deutsche Bank National Trust Company, as Indenture Trustee for Mortgage IT Trust 2005-2, the holder of one of those mortgages, asserts that preclusionary principles prevented the bankruptcy court from revisiting the foreclosure judgment it obtained in the Connecticut state court and, therefore, the bankruptcy court properly denied confirmation of the Debtor's original plan.[1]

For the reasons discussed below, we **DISMISS** this appeal as equitably moot.

<h2 style="text-align:center"><u>BACKGROUND</u></h2>

**I.      Pre-Petition Events**

The Debtor is an individual who resides in Maine and formerly owned two real properties in Connecticut: 139 East Elm Street in Greenwich (the "Elm Street Property") and 10 Jackson Street in Cos Cob (the "Jackson Street Property").

---

[1] Although named as appellees, neither Deutsche Bank National Trust Company, as trustee for WAMU Mortgage Pass-Through Certificates, Series 2005-AR6 (the holder of the other mortgage), nor the chapter 13 trustee have filed briefs or have otherwise participated in this appeal.

## A.      The Elm Street Property

On January 24, 2005, the Debtor executed an adjustable rate note in favor of IPI Skyscraper Mortgage Corporation ("Skyscraper") in the amount of $650,000 (the "Elm Street Note"). To secure the Elm Street Note, the Debtor granted a mortgage on the Elm Street Property to Mortgage Electronic Systems, Inc., as nominee for Skyscraper (the "Elm Street Mortgage"). The Elm Street Note and Elm Street Mortgage were first assigned to MortgageIT, Inc., and then to appellee Deutsche Bank National Trust Company, as Indenture Trustee for Mortgage IT Trust 2005-2 ("Deutsche Elm").

In October 2017, Deutsche Elm initiated foreclosure proceedings, seeking a judgment of foreclosure by sale in the Connecticut state court (the "State Court"). After a default for failure to plead issued against the Debtor, the State Court entered a judgment of foreclosure by sale at a hearing conducted on November 13, 2018. Based on that judgment, the State Court scheduled a foreclosure sale of the Elm Street Property for March 16, 2019. The sale date was continued from time to time and was ultimately stayed by the filing of the Debtor's chapter 13 bankruptcy case.

## B.      The Jackson Street Property

On December 1, 2004, the Debtor and her husband Frank Pitassi executed a note in the amount of $927,500 (the "Jackson Street Note") in favor of Washington Mutual Bank, FA. That note was secured by a mortgage on the Jackson Street Property (the "Jackson Street Mortgage"). The Jackson Street Mortgage was modified by a written agreement between Frank Pitassi, the Debtor, and Washington Mutual Bank in 2008 (the "Loan Modification Agreement"). Under the Loan Modification Agreement, the Debtor released all claims which might render the Jackson Street Mortgage or the Jackson Street Note void or unenforceable. In December 2009, the Jackson Street Note, Jackson Street Mortgage, and the Loan Modification Agreement were

3

assigned to Deutsche Bank National Trust Company, as trustee for WAMU Mortgage Pass-Through Certificates, Series 2005-AR6 ("Deutsche Jackson").

In August 2016, Deutsche Jackson commenced a foreclosure action against the Debtor in the State Court to foreclose on the Jackson Street Property. Several months later Deutsche Jackson filed a motion for default due to the Debtor's failure to appear in the foreclosure action, and the State Court granted the motion. The Debtor was unsuccessful in her efforts to vacate the entry of default. Thereafter, on August 13, 2018, a judgment of foreclosure by sale was entered against the Debtor (the "Jackson Street Judgment"). After the Debtor's appeal of that judgment was dismissed, the State Court issued two notices of judgment of strict foreclosure: the first on August 1, 2022, and the second, a "corrective" notice, on August 23, 2022.

## II.     The Debtor's Chapter 13 Bankruptcy Filing

The Debtor filed a petition for chapter 13 relief on August 10, 2022 (before the entry of the second notice of judgment against the Jackson Street Property), thereby staying the foreclosure proceeding. On Schedule A of her bankruptcy schedules, the Debtor listed the Elm Street Property as her former residence and the Jackson Street Property as a rental property. On Schedule D, she listed Deutsche Elm and Deutsche Jackson as the holders of disputed secured claims.[2] Deutsche Elm filed a proof of secured claim in the amount of $957,804.75, and Deutsche Jackson filed a proof of secured claim in the amount of $802,534.47. The Debtor did not file objections to either proof of claim.

---

[2] In June 2011, the Debtor filed a prior, no-asset chapter 7 case jointly with her husband, in which she received a discharge in October 2011. See Case No. 11-20958 (Bankr. D. Me.). The Debtor listed the Elm Street Property and Jackson Street Property on her schedules in that case but identified the holders of mortgages on the properties at that time as GMAC Mortgage and Chase Home Finance, LLC, respectively.

### A.     The Plan and Objections

On September 27, 2022, the Debtor filed her original proposed chapter 13 plan (the "Original Plan"). That plan provided for monthly payments to the chapter 13 trustee totaling approximately $80,000, with $53,000 allocated to nonpriority unsecured creditors and the balance to priority claimants. It did not propose any payments to Deutsche Elm or Deutsche Jackson. Moreover, the Original Plan contained the following Nonstandard Plan Provision in section 8.1, giving rise to the parties' dispute:

> Deutsche Bank National Trust (the Bank) claims an interest in two of Debtor's properties—139 East Elm St. Greenwich CT and 10 Jackson St. Cos Cob CT. The Bank has filed proofs of claim respecting each property. Debtor has hired an expert witness (a forensic securities analyst) who has opined that the Bank has no legal claim or interest in either property. As such the Bank's claims will be denied, no money is owed to the Bank for these properties, and the Bank lacks any mortgage interest in the properties. In addition, Debtor received a bankruptcy discharge on 10/17/2011 in case 11-20958 which discharged her obligation on any such debt. Finally, on information and belief, the Bank does not hold the original notes. The Bank shall file in the appropriate registry of deeds discharges of their claims to any interest in mortgages and notes related to the properties.

Deutsche Elm objected to confirmation of the Original Plan on the grounds that it did not provide any treatment for its secured claim, in violation of § 1325(a)(5) and § 1322(b).[3] Deutsche Jackson also objected to confirmation, asserting that the Debtor's prior chapter 7 discharge "estopped" her from challenging the bank's efforts to foreclose its lien.

### B.     Confirmation Hearings

The bankruptcy court conducted an initial hearing on confirmation of the Original Plan and on the Debtor's motion to continue the automatic stay. After hearing arguments from the parties, the bankruptcy court granted the Debtor's motion to extend the automatic stay and continued the hearing on confirmation. It also directed the parties to submit briefs on the issue of

---

[3] References to "Code," "Bankruptcy Code," or to specific statutory sections are to 11 U.S.C. §§ 101-1532, unless otherwise noted.

whether preclusionary doctrines (collateral estoppel and res judicata) barred the Debtor's challenges to the subject mortgages and precluded confirmation of the Original Plan.

On November 18, 2022, the bankruptcy court conducted a continued hearing on plan confirmation, with a focus on the collateral estoppel issues. Turning its attention to the State Court foreclosure proceedings, the bankruptcy court concluded, among other things, that implicit in the State Court's foreclosure judgments was a finding that the Deutsche entities were the holders of the mortgages. As to the Elm Street Property, the bankruptcy court concluded that principles of issue and claim preclusion barred the Debtor from challenging the Elm Street Mortgage. Additionally, the bankruptcy court considered the doctrine of judicial estoppel. It opined that the Debtor could have, and should have, raised her challenge, at least as to the Jackson Street Mortgage, in her prior chapter 7 case but failed to do so. Therefore, she was judicially estopped from later challenging that mortgage in her chapter 13 plan.

At the conclusion of the hearing, the bankruptcy court ruled that confirmation of the Original Plan had to be denied, explicitly citing claim preclusion and issue preclusion as the basis for its decision, and implicitly citing judicial estoppel:

> I'm denying confirmation, . . . as respects [section] 8.1's treatment of Deutsche Bank on the East Elm property, because I find that it fits into both the areas of claims and issue preclusion, for the reasons that I said earlier on the record.

> As far as Deutsche Bank Jackson property, and interest in that property, I find that 8.1. cannot—the way 8.1 is presently written . . . , that the bank has no legal claim or interest in either, that to the extent that the debtor had such a claim, that claim was in existence at the time of the debtor's 2011 bankruptcy. The debtor's failure to list it then precludes the debtor from asserting it now.

Thereafter, the bankruptcy court entered the Order Denying Confirmation for the reasons stated on the record.

## III. The Amended Plan

The Debtor filed a notice of appeal from the Order Denying Confirmation together with a motion for leave to appeal (BAP No. EP 22-042). Ultimately the Panel dismissed the appeal as interlocutory. Following the dismissal of that appeal, Deutsche Elm and Deutsche Jackson obtained relief from the automatic stay in January 2023.

On January 3, 2024, the Debtor filed her Third Modified Plan (the "Amended Plan"). Of relevance here, the Amended Plan provided for the surrender of both the Elm Street Property and the Jackson Street Property to Deutsche Elm and Deutsche Jackson, respectively. On April 2, 2024, the bankruptcy court entered the Confirmation Order, confirming the Amended Plan.

## IV. This Appeal

On April 15, 2024, the Debtor appealed both the 2024 Confirmation Order and the 2022 Order Denying Confirmation. Two days later, the Debtor filed another notice of appeal, this time identifying the Confirmation Order as the only order on appeal. The Debtor's statement of issues on appeal and her appellate brief make clear, however, that she seeks review of the Order Denying Confirmation, exclusively. See Fed. R. Bankr. P. 8003(a)(4) ("The notice of appeal encompasses all orders that, for purposes of appeal, merge into the identified judgment or appealable order or decree. It is not necessary to identify those orders in the notice of appeal.").

Significant to this appeal, the Debtor did not seek or obtain a stay of the Confirmation Order pending appeal in the bankruptcy court or in this court. Given the lack of a stay, on December 17, 2024, we ordered the parties to file supplemental briefs on the following issues which were not addressed in their main briefs: (1) the status of the Amended Plan's implementation; and (2) whether the Elm Street Property and the Jackson Street Property have been surrendered and/or foreclosed upon.

In her supplemental brief, the Debtor reported that she is current on her payments required under the Amended Plan, and the Elm Street Property "was surrendered to Deutsche [Elm] . . . which held a foreclosure sale on 10/19/2024," noting that the "property was sold for $1,010,000 to Ira Tamigian of Palm[] Beach, Florida." As to the Jackson Street Property, the Debtor stated that "[b]y [o]rder of the Superior Court, Judicial District of Stamford-Norwalk [Connecticut] dated 5/21/2024, the final Law Day was 7/1/24 at which time title reverted to Deutsche [Jackson] . . . ."[4] The Debtor further advised that the Jackson Street Property was listed on Zillow as "under contract" and on Realtor.com as subject to a "pending" sale as of the date of her supplemental brief.

In its supplemental brief, Deutsche Elm agreed that the Debtor surrendered the Elm Street Property, effective in April 2024, upon confirmation of the Amended Plan. Consequently, Deutsche Elm contended, it "may, but is not required, [to] exercise its rights in and to the Elm Street Property." Contrary to the Debtor's report, Deutsche Elm explained that "[f]or various reasons, [Deutsche] Elm did not complete the foreclosure sale prior to the bankruptcy filing.

---

[4] "Law day" is a term of art unique to the strict foreclosure process in Connecticut, which "does not involve a foreclosure sale" and is "the normal method of foreclosure" in Connecticut. Baxter Dunaway, 1 Law of Distressed Real Estate § 18:54 (May 2024 Update). The import of the Debtor's reference to the "final law day" thus requires an understanding of certain aspects of Connecticut foreclosure law and the strict foreclosure process in Connecticut, explained by one court:

> "In Connecticut, a mortgagee has legal title to the mortgaged property and the mortgagor has equitable title, also called the equity of redemption. . . . The equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage, the most important of which is usually the payment of money. . . . Under [Connecticut] law, an action for strict foreclosure is brought by a mortgagee who, holding legal title, seeks not to enforce a forfeiture but rather to foreclose an equity of redemption unless the mortgagor satisfies the debt on or before his law day. . . . Accordingly, [if] a foreclosure decree has become absolute by the passing of the law days, the outstanding rights of redemption have been cut off and the title has become unconditional in the plaintiff, with a consequent and accompanying right to possession."

Lending Home Funding Corp. v. REI Holdings, LLC, 281 A.3d 1, 7 (Conn. App. Ct. 2022) (citations omitted); see also Conn. Gen. Stat. § 49-19.

8

Notwithstanding relief from the stay and the surrender of its collateral under the Plan, [Deutsche] Elm has held off conducting the auction pending the disposition of this appeal."

Deutsche Elm has not filed any further submissions to dispute the Debtor's contention that the Elm Street Property was foreclosed upon in October 2024 and sold to a third party. Given Deutsche Elm's silence on this point since the filing of the parties' supplemental briefs, the Panel will take the Debtor at her word about the status of the Elm Street Property.

## APPELLATE JURISDICTION

We are required to inquire into our jurisdiction, even where the issue is not raised by the litigants. See McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004); see also Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382 (1884); Wilson v. Wells Fargo Bank, N.A. (In re Wilson), 402 B.R. 66, 68 (B.A.P. 1st Cir. 2009). Absent other considerations, we have statutory jurisdiction to hear appeals from final judgments, orders, and decrees. 28 U.S.C. § 158(a)-(c).

A bankruptcy court order confirming a proposed chapter 13 plan is a final, appealable order. Bullard v. Blue Hills Bank, 575 U.S. 496, 505 (2015); United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 269 (2010); Asociación de Empleados del Estado Libre Asociado de P.R. v. Mojica Nieves (In re Mojica Nieves), 647 B.R. 809, 823 (B.A.P. 1st Cir. 2023). Thus, the Confirmation Order is a final, reviewable order. That order, however, is not the subject of this appeal. Here, the Debtor challenges the Order Denying Confirmation, which has merged into the Confirmation Order and is now ripe for review. See Messer v. Maney (In re Messer), BAP No. AZ-13-1215-PaKuD, 2014 WL 643712, at *3 (B.A.P. 9th Cir. Feb. 19, 2014) (reviewing earlier order denying confirmation of amended plan after second amended plan was

9

confirmed, citing merger principle).[5] Accordingly, our jurisdiction would encompass the Order

Denying Confirmation were there no other impediments to our consideration of the merits.

## EQUITABLE MOOTNESS

### I.     The Equitable Mootness Doctrine

The jurisdictional issue of finality, however, is not the only relevant consideration in

determining whether we should reach the merits of an appeal. "Mootness—which encompasses

both equitable and jurisdictional considerations—is another factor we must take into account."

La Trinidad Elderly LP SE v. Loíza Ponce Holdings LLC (In re La Trinidad Elderly LP SE),

627 B.R. 779, 794 (B.A.P. 1st Cir. 2021) (citing United Sur. & Indem. Co. v. López-Muñoz

(In re López-Muñoz), 983 F.3d 69, 72 (1st Cir. 2020); Melo v. GMAC Mortg., LLC (In re

Melo), 496 B.R. 253, 256 (B.A.P. 1st Cir. 2013)). "[B]ecause mootness is a threshold issue, we

may determine it sua sponte." Id. (quoting Richmond v. Sovereign Bank (In re Formatech, Inc.),

BAP No. MW 12-013, 2013 WL 87406, at *1 (B.A.P. 1st Cir. Jan. 8, 2013)). Based on our

analysis below, we conclude that equitable mootness precludes our resolution of this appeal on

the merits.

"[E]quitable mootness is a pragmatic principle, grounded in the notion that, with the

passage of time after a judgment in equity and implementation of that judgment, effective relief

on appeal becomes impractical, imprudent, and therefore inequitable." Id. at 795 (quoting Mac

Panel Co. v. Va. Panel Corp., 283 F.3d 622, 625 (4th Cir. 2002)). In bankruptcy proceedings,

---

[5] While the Confirmation Order is ostensibly favorable to the Debtor, the Eighth Circuit recognized that a debtor who abandons an initial plan to obtain confirmation has standing under the person aggrieved standard to appeal the final confirmation order. See Zahn v. Fink (In re Zahn), 526 F.3d 1140, 1142 (8th Cir. 2008). We agree with the Zahn court's reasoning that precluding a debtor from appealing "confirmation of her own plan would require a debtor to comply with a plan that contains provisions the debtor does not believe are required by the Bankruptcy Code, while losing her right to appeal those provisions." Id. at 1143.

equitable mootness "centers on the important public policy favoring orderly reorganization and settlement of debtor estates by 'affording finality to the judgments of the bankruptcy court.'" Rochman v. Ne. Utils. Serv. Grp. (In re Pub. Serv. Co. of N.H.), 963 F.2d 469, 471-72 (1st Cir. 1992) (citations omitted). For this reason, the equitable mootness doctrine is "akin to equitable laches, the notion that the passage of time and inaction by a party can render relief inequitable." Pinto-Lugo v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 987 F.3d 173, 181 (1st Cir. 2021) (citation omitted).

The First Circuit has long recognized that "where a reorganization plan has been in place for an extended period of time after thorough vetting and approval by the bankruptcy court, there comes a point where 'the impracticability of fashioning fair and effective judicial relief' cautions against disturbing the reorganization plan." In re López-Muñoz, 983 F.3d at 72 (citations omitted); see also Samuels v. Wilmington Sav. Fund Soc'y, FSB (In re Samuels), No. 20-9001, 2022 WL 18357190, at *1 (1st Cir. Aug. 9, 2022); Prudential Ins. Co. of Am. v. SW Bos. Hotel Venture, LLC (In re SW Bos. Hotel Venture, LLC), 748 F.3d 393, 402 (1st Cir. 2014). Courts have held that "equitable mootness has a legitimate role to play in bankruptcy reorganization cases of all types," including chapter 13 cases. Franklin High Yield Tax-Free Income Fund v. City of Stockton (In re City of Stockton), 542 B.R. 261, 274 (B.A.P. 9th Cir. 2015) (citing Darrah v. City of Detroit (In re City of Detroit), No. 15-cv-10036, 2015 WL 5697779, at *4 (E.D. Mich. Sept. 29, 2015)), aff'd, 838 F.3d 792 (6th Cir. 2016); see also In re Fin. Oversight & Mgmt. Bd. for P.R., 987 F.3d at 181 ("It should come as no surprise that considerations of equity play a role in reviewing challenges to the confirmation of plans of reorganization in bankruptcy courts."); Pennington-Thurman v. Fed. Home Loan Mortg. Corp. (In re Pennington-Thurman), No. 4:19CV3093 HEA, 2020 WL 2114529, at *3 (E.D. Mo. May 4, 2020), aff'd, 835 F. App'x

11

896 (8th Cir. 2021); <u>Griffin v. Novastar Mortg. Inc. (In re Ramsey)</u>, BAP No. KS-07-050, 2008 WL 1815701, at *4 (B.A.P. 10th Cir. Apr. 9, 2008).

## II.     Applying the Equitable Mootness Doctrine

The equitable mootness test requires us to "inquire[] whether an unwarranted or repeated failure to request a stay enabled developments to evolve in reliance on the bankruptcy court order to the degree that their remediation has become impracticable or impossible." <u>Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)</u>, 136 F.3d 45, 48 (1st Cir. 1998) (citation omitted). "Because of the nature of [plan] confirmations, . . . it 'is obligatory upon appellant[s] . . . to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order . . . , if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.'" <u>Nordhoff Invs., Inc. v. Zenith Elecs. Corp.</u>, 258 F.3d 180, 186-87 (3d Cir. 2001) (citations omitted); <u>see also</u> <u>In re López-Muñoz</u>, 983 F.3d at 72; <u>In re Cont'l Airlines</u>, 91 F.3d 553, 566 (3d Cir. 1996) ("[T]here was a clear possibility that the [appellants'] claims would become moot after consummation of the Plan, and it was therefore incumbent on the [appellants] to obtain a stay."). We have previously observed that "the diligence requirement" is "a 'chief consideration' in equitable mootness determinations." <u>In re La Trinidad Elderly LP SE</u>, 627 B.R. at 794 (quoting <u>GLM DFW, Inc. v. Windstream Holdings, Inc. (In re Windstream Holdings, Inc.)</u>, 838 F. App'x 634, 637 (2d Cir. 2021)).

Here, the Debtor allowed the Amended Plan to go into effect on April 2, 2024, without attempting to stay the Confirmation Order either in the bankruptcy court or in this court.[6] This is

---

[6] The Debtor's unsuccessful attempt at interlocutory appellate review of the Order Denying Confirmation does not excuse the subsequent failure to seek a stay pending appeal of the Confirmation Order or expedited appellate review of the Confirmation Order. <u>See</u> Fed. R. Bankr. P. 8013(a)(2)(B) (providing for motion to expedite an appeal); <u>see also</u> <u>In re López-Muñoz</u>, 983 F.3d at 72-73 (where the First Circuit, in its equitable mootness analysis, faulted appellant for failing to obtain a stay or to seek an expedited determination of its BAP appeal); <u>Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re</u>

critical because under the Amended Plan the Debtor has surrendered both the Elm Street Property and the Jackson Street Property, the very properties the Debtor sought to retain under the Original Plan.[7] Moreover, there is no dispute that one of the surrendered properties—the Jackson Street Property—has been foreclosed upon in the absence of a stay. According to the Debtor, the law days passed after the entry of a judgment of strict foreclosure and title to the Jackson Street Property "reverted to" Deutsche Jackson, an assertion Deutsche Jackson has not challenged. Now that title has vested in Deutsche Jackson, "no practical relief is available" to the Debtor. See Lending Home Funding Corp., 281 A.3d at 7 (citation omitted). "In other words, '[Conn. Gen. Stat.] § 49-15(a)(1) . . . generally prohibits mortgagors from obtaining practical relief after the passage of the law days and, as a result, [renders] . . . postvesting motions to open a judgment . . . moot.'" Id. (quoting U.S. Bank Nat'l Ass'n v. Rothermel, 260 A.3d 1187, 1193 (Conn. 2021)).

As for the Elm Street Property, according to the Debtor, it too has been foreclosed upon, through the process of a foreclosure sale. Deutsche Elm has neither objected to nor corrected the Debtor's representation in her supplemental brief that Deutsche Elm foreclosed on that property and sold it to a third party, a representation at odds with its characterization of the status of that property.

Thus, even if we were to agree with the Debtor that the bankruptcy court should have confirmed the Original Plan, "we 'can no longer provide any meaningful relief' by ordering the

---

Metromedia Fiber Network, Inc.), 416 F.3d 136, 144-45 (2d Cir. 2005) (holding that when a party does not diligently pursue a stay or seek expedited appellate review, "the question is not solely whether we can provide relief without unraveling the Plan, but also whether we *should* provide such relief in light of fairness concerns") (citations omitted).

[7] See Wells Fargo, N.A. v. Sagendorph (In re Sagendorph), 562 B.R. 545, 552-53 (D. Mass. 2017) ("Specific to section 1325(a)(5)(C), 'surrender' has been taken to mean the 'relinquishment of any rights in the collateral.'") (citations omitted).

13

bankruptcy court to do so." In re Samuels, 2022 WL 18357190, at *1 ("We agree with the BAP that the foreclosure of one of [the debtor's] two properties has mooted her appeal of the Confirmation Order."); see also Townley v. Fitzgerald (In re Townley), BAP No. WW-10-1397-JuWaPa, 2011 WL 6934444, at *6 (B.A.P. 9th Cir. Nov. 7, 2011) (concluding that appeal of an order denying confirmation of a chapter 13 plan that provided for debtor's retention of property was moot when the property was sold at a foreclosure sale after the bankruptcy case was dismissed), aff'd, 553 F. App'x 731 (9th Cir. 2014); Brook View Apts. v. Republic Fed. Sav. & Loan Ass'n (In re Brook View Apts.), No. 92-16606, 1994 WL 161690, at *1 (9th Cir. May 2, 1994) (holding that appeal of the denial of confirmation was moot because the plan was not feasible after the debtor's principal asset was sold); In re Tri-Cities Memory Gardens, Inc., No. 2:14-CV-361, 2014 WL 7151016, at *3 (E.D. Tenn. Dec. 12, 2014) (acknowledging that loss of debtor's primary asset at a foreclosure sale would render any attempt at reorganization moot).

When we consider the foreclosure of these properties in the face of the Debtor's lack of diligence in pursuing a stay, it becomes clear that the Amended Plan has proceeded "to a point well beyond any practicable appellate annulment[.]" In re López-Muñoz, 983 F.3d at 73 (internal quotation marks omitted).[8]

---

[8] Further, because the Debtor disregarded the mandated procedural mechanisms for challenging the mortgages of the Deutsche entities, she could not have obtained confirmation of the Original Plan as proposed, in any event. The bankruptcy court's docket reflects that the Debtor never filed an objection to the proof of claim of either Deutsche entity. See TD Bank, N.A. v. LaPointe (In re LaPointe), 505 B.R. 589, 591 n.1 (B.A.P. 1st Cir. 2014) (stating Panel "may take judicial notice of the bankruptcy court's docket and imaged papers"). "Generally, absent a written objection from a party in interest, a claim is 'deemed allowed' upon the filing of a timely proof of claim." Shook v. Contractors Bonding & Ins. Co. (In re Shook), 278 B.R. 815, 821 (B.A.P. 9th Cir. 2002) (citations omitted); see also 11 U.S.C. § 502(a). "A proof of claim properly executed and filed is *prima facie* evidence of the validity and amount of the creditor's claim." In re Shook, 278 B.R. at 821 (citing Fed. R. Bankr. P. 3001(f)). Additionally, in the U.S. Bankruptcy Court for the District of Maine, the claim objection procedure in chapter 13 cases is governed by D. Me. LBR 3007-1, which provides that "an objection to a claim under § 502(b) of the Code shall be filed within 30 days after the applicable deadline for the filing of the claim." See D. Me. LBR 3007-1(a). Also, under Fed. R. Bankr. P. 7001(b), an adversary proceeding must be commenced when seeking "to determine the validity, priority, or extent of a lien or other interest in property . . . ."

## CONCLUSION

For the reasons discussed above, we conclude that the Debtor's appeal of the Order Denying Confirmation is equitably moot. Accordingly, it is **DISMISSED**. A separate judgment shall enter.

---

Fed. R. Bankr. P. 7001(b); see also Lugo Morales v. Select Portfolio Servicing (In re Lugo Morales), 607 B.R. 16, 28 (Bankr. D.P.R. 2019). The Debtor cannot circumvent the prescribed claim objection procedure or the requirement for an adversary proceeding merely by including a provision in the Original Plan or by listing the subject claims as disputed in her schedules. See Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.), 293 B.R. 489, 493 (B.A.P. 9th Cir. 2003).